UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
----------------------------X
                            :
VITA CIULLO,                :
                            :
          Plaintiff,        :
                            :
v.                          :        Civ. No. 03:12CV1772 (AWT)
                            :
UNITED STATES OF AMERICA,   :
                            :
          Defendant.        :
----------------------------X
```

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Vita Ciullo ("Ciullo") brings this negligence action grounded in premises liability against defendant United States of America ("United States") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).  The defendant has moved for summary judgment.  For the reasons set forth below, the defendant's motion for summary judgment is being granted.

**I.   FACTUAL BACKGROUND**

On June 1, 2010, Robert Boroczky ("Boroczky"), the Supervisor of the Oakville Post Office (the "Post Office") in Oakville, Connecticut, arrived at work at 8:00 a.m.  Boroczky entered the Post Office through the employee entrance in the back of the building.  He was the second employee to arrive, and was preceded by Lee Vinca ("Vinca"), a letter carrier at the Post Office, who also entered through the employee entrance.  Vinca was responsible for opening the Post Office in the

-1-

morning, which included unlocking the front entrance to the Post
Office.  On June 1, 2010, Vinca checked the Post Office lobby
for debris and then "looked outside the front entrance checking
the entrance area and steps for trash."  (Vinca Aff. (Doc. No.
18-5) ¶ 5).  Vinca did not see any debris or trash and was not
notified by anyone that there was any debris or trash in either
area.

On that same morning, the plaintiff arrived at the Post
Office at 8:50 a.m.  The plaintiff parked in a small parking lot
directly across from the Post Pffice, and as she approached the
Post Office, she did not notice anything on the exterior stairs
leading into the Post Office.  While the garbage pail in front
of the Post Office had some trash hanging out of it, there was
no trash on the ground, and the plaintiff did not have to step
over any trash to enter the Post Office.

The plaintiff proceeded up the right side of the stairs and
did not see anything out of the ordinary about the stairs.  When
she entered the Post Office, the plaintiff saw that although the
lobby was open, the customer counter was closed and would not
open until 9:00 a.m.  The plaintiff turned around and left the
Post Office.

The plaintiff began descending the stairs on the side
opposite which she had entered the Post Office, but when she
reached the second step from the top, she slipped on a dowel

that was on the step and fell backwards.  The plaintiff had not seen the dowel when she walked into the Post Office.  The plaintiff picked up the dowel, which she described as ten inches long and the width of a pencil, and went back into the Post Office lobby.  She banged on the metal door at the closed customer service window, and Boroczky exited from the back room. The plaintiff told Boroczky that she had fallen, and Boroczky wrote down the plaintiff's name and phone number.  Prior to the plaintiff informing him of her fall, Boroczky was not aware that there was a dowel on the front stairs.

The plaintiff left the Post Office and called her husband to tell him that she had fallen.  Her husband told her that she should go back to the Post Office and fill out an incident report.  After running an errand, the plaintiff returned to the Post Office to file an incident report, but she was told that she would have to go to the Watertown Post Office instead to file the report.  She did so.

The plaintiff went to work the night of June 1, 2010, at 5:30 p.m. and worked until 11:30 p.m.  She did not seek medical attention related to her fall until two weeks after the accident.

The day prior to the plaintiff's fall at the Post Office, there was a Memorial Day parade held in Oakville, Connecticut. According to a flyer describing the parade, the parade route

began at the Watertown Plaza, proceeded on Route 63 South to Route 73, and ended at the Oakville Green, where a ceremony was conducted.  While the parade route was in the vicinity of the Post Office, it did not pass in front of the Post Office.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(a) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury.  The court, therefore, may not try issues of fact.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  It is well-established that "[c]redibility

-4-

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law." Id.  As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  When confronted with an asserted factual dispute, the

court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses.  Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could

reasonably find for the [nonmovant]." <u>Anderson</u>, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in her pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See <u>Celotex Corp.</u>, 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," <u>Weinstock</u>, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." <u>Aslanidis v. United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." <u>Weinstock</u>, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

## III. DISCUSSION

"Under the FTCA the government's liability is determined by the application of the law of the place where the act or omission occurred." <u>Davis v. U.S.</u>, 430 F. Supp. 2d 67, 73 (D.

Conn. 2006) (citing 28 U.S.C. § 1346(b)).  Thus, Connecticut law applies in the present case.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury."  Baptiste v. Better Val-U Supermarket, Inc., 262 Conn. 135, 138 (2002).  In this case, the parties do not dispute that the plaintiff was a business invitee, and therefore the duty owed to the plaintiff by the defendant was a duty to maintain its premises in a reasonably safe condition.  See Kelly v. Stop & Shop, Inc., 281 Conn. 768, 776 (2007) ("It is undisputed that the owner of a retail store has a duty to keep the premises in a reasonably safe condition for the benefit of its customers.").  Thus, to hold the defendant liable for her injuries, the plaintiff must prove "(1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had existed for such a length of time that the defendant should, in the exercise of reasonable care, have discovered it in time to remedy it."  Martin v. Stop & Shop Supermarket Cos., Inc., 70 Conn. App. 250, 251 (2002) (internal quotation marks omitted).  The defendant has moved for summary judgment on the ground that it did not have notice, actual or constructive, that the dowel was present on the Post Office

stairs, and therefore it cannot be liable for the plaintiff's injuries.

## A. __Actual Notice__

Actual notice is "[n]otice given directly to, or received personally by, a party." Black's Law Dictionary 1164 (9th ed. 2009). Thus, to show actual notice in the present case, the plaintiff has to show that the defendant actually knew that the dowel was on the second step of the Post Office stairs.

In support of its motion for summary judgment, the defendant submits as evidence the statements of Boroczky and Vinca regarding their lack of knowledge that the dowel was on the second step. At his deposition, Boroczky testified that prior to the plaintiff informing him that she had fallen, he did not know that there was a dowel on the stairs. (Boroczky Dep. (Doc. No. 18-4) at 39:25-40:3). He further testified that if he had known that there was something on the stairs prior to the plaintiff's fall, he would have removed it. (Boroczky Dep. at 39:17-24). Vinca submitted an affidavit in which he stated that when he unlocked the front entrance to the Oakville Post Office on June 1, 2010, he "did not see any debris or trash on the steps or at the entrance of the Post Office" and that he "was not notified by anyone that there was a dowel[], debris or any trash on the steps or at the entrance of the Post Office." (Vinca Aff. ¶ 6).

The plaintiff argues that there is a genuine issue of material fact as to whether the defendant had actual notice that the dowel was on the second step.  However, she presents no evidence that anyone at the Post Office knew about the dowel. Instead, she argues that the court should not credit the statements of either Boroczky or Vinca and that a jury should evaluate their credibility.

As to Vinca's affidavit, the plaintiff argues that "Mr. Vinca's claim that he properly policed the exterior stairway but did not see the round dowel[] flies in the face of the testimony of Mr. Boroczky who specifically stated that no postal employee is tasked with inspecting the exterior premises before the Post Office opens for business in the morning." (Pl.'s Mem. Opp. Mot. Summ. J. (Doc. No. 19) at 9).  It appears that the plaintiff is asking the court to conclude that Vinca lied about "polic[ing] the exterior stairway."  While the plaintiff has proffered no evidence in support of such an assertion, even if the court were to conclude that Vinca did not actually police the exterior stairs of the Post Office on the morning of June 1, 2010, such a fact would mean that Vinca did not have actual notice that the dowel was on the second step, because he would not have seen it.  Thus, there is no genuine issue of material fact as to whether Vinca had actual notice that the dowel was on the Post Office stairs.

As to Boroczky's deposition testimony, the plaintiff argues that Boroczky's testimony that he was not aware of the presence of the dowel on the stairs is "not sufficient evidence to warrant summary judgment because Mr. Boroczky acknowledged that he did not inspect the premises that day . . . ." (Pl.'s Mem. Opp. Mot. Summ. J. at 9). However, the fact that Boroczky did not inspect the stairs, and therefore did not see the dowel, shows that he did not have actual notice that the dowel was on the stairs. Therefore, there is no genuine issue as to the fact that Boroczky did not have actual notice that the dowel was located on the second step of the Post Office stairs.

The plaintiff has not proffered any evidence to show that Vinca, Boroczky, or any other employee of the Post Office actually knew that the dowel was located on the second step of the Post Office stairs. At her deposition, the plaintiff testified that she does not know if anyone at the Post Office knew that there was a dowel on the stairs before she fell. Thus, in the absence of any evidence that anyone at the Post Office knew that there was a dowel on the exterior stairs before the plaintiff fell, there is no genuine dispute as to the fact that the defendant did not have actual notice of the defect.[1]

---

[1] Throughout the actual notice section of the plaintiff's memorandum in opposition to the motion for summary judgment, the plaintiff refers to the defendant's burden on a motion for summary judgment. She appears to argue that the plaintiff's failure to come forward with evidence showing actual notice is not grounds for granting summary judgment because the defendant has

-11-

### B.   <u>Constructive Notice</u>

"The controlling question in deciding whether the defendant[] had constructive notice of the defective condition is whether the condition existed for such a length of time that the defendant[] should, in the exercise of reasonable care, have discovered it in time to remedy it.  What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case."  <u>Riccio v. Harbour Vill. Condo. Ass'n, Inc.</u>, 281 Conn. 160, 163-64 (2007) (internal quotations marks and citation omitted).  "To establish constructive notice, [the plaintiff] must adduce some evidence, either direct or circumstantial, that establishes the length of time the defect was present."  <u>Navarro v. Kohl's Dep't Stores, Inc.</u>, No. 3:05CV00843(DJS), 2007 WL 735787, at *4 (D. Conn. Mar. 8, 2007).  However, "[a]n inference [of constructive notice] must have some definite basis in the facts and the conclusion based on it must not be the result of speculation and conjecture."  <u>Gulycz v. Stop & Shop Cos., Inc.</u>,

---

the initial burden on a motion for summary judgment of showing that there is no genuine issue of material fact. (<u>See</u> Pl.'s Mem. Opp. Mot. Summ. J. at 8 ("The Defendant's argument that Ms. Ciullo has not produced evidence to prove actual notice is misguided because the initial burden is on the Defendant and the Defendant has failed to meet its burden.")).  However, here the defendant met its initial burden, which means the burden shifts to the plaintiff to proffer evidence establishing the existence of a genuine issue of material fact.  Rule 56(a) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp.</u>, 477 U.S. at 322.  The plaintiff has failed to do so.

29 Conn. App. 519, 522 (1992) (internal quotation marks and citation omitted).  The defendant argues that summary judgment should be granted because the plaintiff has offered no evidence establishing how long the dowel had been on the Post Office stairs before she slipped on it.

The plaintiff contends that the dowel came from the parade, and therefore the defect existed from the time of the parade until the plaintiff slipped on the dowel.  In support of her contention, the plaintiff repeatedly states that she has "adduced evidence that establishes the length of time the dowel was present on the Post Office's exterior stairway, specifically, from Memorial Day, May 31, 2010, until the morning of the subject incident, June 1, 2010."  (Pl.'s Mem. Opp. Mot. Summ. J. at 18).  However, the evidence to which the plaintiff cites shows that the plaintiff's theory that the dowel was present from the time of the parade to the time that she slipped on it is based only on speculation.

The plaintiff has submitted evidence that the parade took place in the vicinity of the Oakville Post Office on May 31, 2010.[2]  However, that is the only evidence she has adduced that

_____

[2] In her opposition to the motion for summary judgment, the plaintiff appears to suggest that the parade route went past the Post Office.  She cites to Boroczky's deposition in which, when first asked about the parade, he testified that he believed that the path of the parade went by the Post Office and that while he "ha[d] no idea exactly," people most likely stood on Post Office grounds to watch the parade.  (Boroczky Dep. at 28:1).  However, after consulting a flyer containing the parade route, Boroczky was asked "[D]o you believe that the parade went in front of the Oakville Post Office

the dowel came from the parade.  While the plaintiff testified at her deposition that it "was a dowel from the parade" (Ciullo Dep. (Doc. No. 18-3) at 69:25), the undisputed evidence shows that her conclusion was based only on her own speculation.[3]  In describing the dowel, the plaintiff testified that "It was a dowel that at the parade children can buy them.  There's an elastic band with a toy hanging off of the dowel, and that's what that was." (Ciullo Dep. at 26:13-16).  However, when she was asked whether the dowel she slipped on had a toy on it, she stated, "No.  It did not.  I'm assuming. . . .  It did not have a toy on it." (Ciullo Dep. at 26:23-25).  The plaintiff additionally testified that she did not attend the May 31, 2010 Oakville Memorial Day Parade and that she had "never" attended the Oakville Memorial Day Parade. (Ciullo Dep. at 37:9).  The plaintiff has not presented any evidence that the dowel toys she referred to were sold or present at the parade.  However, even if she had, the plaintiff has also failed to present any evidence showing that the dowel on which she slipped was of the same size and color as the dowels attached to the toys and that there were markings on the dowel showing that a toy had previously been attached to it.

---

on May 31st, 2010?" (Boroczky Dep. at 42:23-25).  Boroczky replied, "No. No, I don't." (Boroczky Dep. at 43:1).
[3] When asked at her deposition whether she knew for sure that the dowel came from the parade, the plaintiff answered "No." (Ciullo Dep. at 70:3). Additionally, the plaintiff has admitted that she does not know when the dowel was left on the stairs.  (56(a)(1) Stmt. ¶ 33).

Additionally, the plaintiff does not provide any evidence as to how or when a dowel from the parade would have ended up on the second step from the top of the exterior stairs of the Post Office.  The evidence presented by the parties shows that the parade route did not go past the Post Office.  Thus, for the dowel to end up where the plaintiff slipped on it, someone would have had to either climb the stairs and drop the dowel there or throw the dowel onto the stairs.  The plaintiff has presented no evidence of when between the time of the parade and her fall this would have happened.  At her deposition, the plaintiff testified that the dowel could have been left on the stairs on May 31, 2010.  When asked if it could have been left there on the morning of June 1, 2010, the plaintiff answered, "Perhaps." (Ciullo Dep. at 70:12).  Furthermore, when asked whether the dowel could have been left on the Post Office steps while she was in the Post Office lobby on June 1, 2010, the plaintiff responded that it was "possible."[4]  (Ciullo Dep. at 71:6).  Even if the plaintiff thought that it was unlikely--as her deposition

---

[4] The plaintiff originally testified that the dowel could not have been left on the steps while she was in the Post Office lobby.  However, after testifying that she was not looking out at the stairs while she was in the lobby and that when she was banging on the window in the lobby she could not see the stairs, the plaintiff testified that it was possible that the dowel could have been left on the stairs while she was inside the Post Office.  In her affidavit, the plaintiff states "I dispute that it is possible the dowel was left on the stairs while I was in the Oakville Post Office lobby on June 1, 2010." (Ciullo Aff. (Doc. No. 19-7) ¶ 12).  However, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that contradicts the affiant's previous deposition testimony."  Bickerstaff v. Vassar Coll., 196 F.3d 435, 455 (2d Cir. 1999).

responses seem to suggest--that the dowel would have been left on the steps while she was inside, "[s]peculation as to the probability or improbability of the timing of an occurrence is not . . . evidence of when the occurrence took place." Navarro, 2007 WL 735787 at *5.

Because the plaintiff's theory that the dowel came from the parade, and thus was on the stairs from that time until she fell is based on speculation and conjecture rather than a definite basis in the facts, the only evidence the plaintiff has as to the amount of time the dowel was on the stairs is that it was there just before she fell.  The mere fact that the dowel was present and that the plaintiff slipped on it, however, is not sufficient to establish the amount of time that the defect existed.  See Gomes v. U.S., No. 3:11-CV-01825(VLB), 2012 WL 5869801, at *7 (D. Conn. Nov. 19, 2012) ("[T]he Court finds that [the plaintiff] has failed to establish constructive notice because he has not presented any evidence to prove how long the leaves were present on the steps. . . .  [T]he only evidence that the wet leaves on which Plaintiff fell existed prior to his fall is Plaintiff's assertion that he fell and noticed the leaves upon falling."); Navarro, 2007 WL 735787, at *6 (stating that where a plaintiff slipped on a puddle in the defendant's store and the plaintiff had not presented any evidence as to the amount of time the puddle had been there, "[t]he sole fact that

the liquid was in a puddle approximately one to three feet in diameter fails, as a matter of law, to demonstrate that the spill was in place for a length of time sufficient to put [the defendant] on constructive notice of the spill."); Gulycz, 29 Conn. App. at 521-22 (holding that the plaintiff had not presented any evidence establishing the amount of time that a protruding hinge and screw on which he was injured had existed in that condition where the plaintiff's only argument as to the length of time was that he was injured by it and "the defect was structural in nature and therefore must have existed for a sufficient length of time so as to enable an inference of constructive notice.").

Because the plaintiff has not proffered evidence to show the amount of time that the dowel on which she slipped was present on the exterior stairs of the Post Office, the plaintiff cannot establish that the defendant had constructive notice of the defective condition.  Therefore, because the plaintiff cannot show that the defendant had actual or constructive notice, the defendant is entitled to judgment on the plaintiff's claim as a matter of law.

IV.  **CONCLUSION**

For the reasons set forth above, the defendant's Motion for Summary Judgment (Doc. No. 18) is hereby GRANTED.  Judgment shall enter in favor of defendant United States of America.

-17-

The Clerk shall close this case.

It is so ordered.

Dated this 14th day of August, 2014, at Hartford,

Connecticut.

                                                 /s/
                                     Alvin W. Thompson
                           United States District Judge